SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| NORTH STAR FISHING COMPANY LLC, a Washington limited liability company,<br><br>    Plaintiff,<br><br>and<br><br>EASTERN SHIPBUILDING GROUP, INC., a Florida corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>NORWEGIAN HULL CLUB, a mutual insurance company organized under the Laws of Norway; RSA INSURANCE GROUP PLC, f/k/a ROYAL & SUN ALLIANCE INSURANCE PLC, a general insurance company organized under the Laws of Great Britain; BRIT SYNDICATE 2987, a Lloyd's of London insurance syndicate, acting through BRIT SYNDICATES LIMITED, its managing agent; MARKEL SYNDICATE MANAGEMENT 3000, a Lloyds of London insurance syndicate, acting through MARKEL SYNDICATE MANAGEMENT LIMITED, its managing agent; QBE MARINE & ENERGY CSN 1036, a Lloyd's of London insurance syndicate, acting through QBE UNDERWRITING LIMITED, its managing agent; THE CHANNEL SYNDICATE 2015, a Lloyd's of London insurance syndicate, acting through THE CHANNEL MANAGING AGENCY LIMITED, its managing agent; NEON 2468, f/k/a MARKETFORM 2468, a Lloyd's of London insurance syndicate, acting through NEON UNDERWRITING LIMITED, its managing agent; | No. _____<br><br>COMPLAINT |

COMPLAINT - 1

and AGCS MARINE INSURANCE COMPANY, a )
general insurance company organized under the )
Laws of Illinois, )
                                                                                                                                                                                            Defendants.               )

       Plaintiff, North Star Fishing Company LLC, formerly known as Iquique US LLC, ("North Star"), and

       Plaintiff, EASTERN SHIPBUILDING GROUP, INC., a Florida corporation, ("Eastern") allege:

### Nature of Action

       1.    This is an action for breach of insurance contract and bad faith insurance claim settlement practices arising out of an all-risks builder's risk insurance policy, policy number FIS-16-001, with unique market reference number B0713MAHHY1603684 (the "Policy"), as more fully described below.  The Named Assureds under the Policy are North Star and Eastern (together the "Assureds").  The defendant underwriters named herein (hereinafter, collectively, the "Insurers") subscribed to and issued the Policy.  Plaintiffs seek:

       (a)    Damages for breach of the Insurers' contractual duties under the subject Policy;

       (b)    Damages for the Insurers' bad faith and violations of the Washington Unfair Claim Settlement Practices Regulations ("UCSPR"), the Washington Consumer Protection Act ("CPA") and the Washington Insurance Fair Conduct Act ("IFCA"), including actual, compensatory and exemplary damages;

       (c)    Pre-judgment and post-judgment interest;

       (d)    A declaratory judgment confirming that the Policy is fully enforceable according to its terms; and

       (e)    All attorneys' fees, costs and litigation expenses incurred by Plaintiffs in asserting this coverage claim and prosecuting this action, pursuant to the CPA and the IFCA

COMPLAINT - 2

1  and the rule in *Olympic Steamship Co., Inc. v. Centennial Ins. Co.,* 117 Wn.2d 37, 811 P.2d 673
2  (1991) and its progeny.

### Parties

4  2. North Star is a limited liability company organized under the laws of
5  the State of Washington, with its principal place of business in Seattle, King County,
6  Washington. North Star is a fishing company that conducts commercial fishing activities in
7  the North Pacific and is a named Assured under the Policy.

8  3. Eastern is a corporation organized under the laws of Florida with its
9  principal place of business in Panama City, Florida. Eastern is a shipbuilder that constructs
10 fishing vessels and other commercial vessels. Eastern is also a named Assured under the
11 Policy.

12 4. The Insurers are as follows:

13 (a) Norwegian Hull Club is a mutual insurance company organized
14 under the laws of Norway with its principal place of business in Bergen, Norway.
15 Norwegian Hull Club is the lead subscribing underwriter on the Policy.

16 (b) RSA Insurance Group PLC, formerly known as Royal & Sun
17 Alliance Insurance PLC ("RSA"), is a general insurance company organized under the laws
18 of Great Britain, with its principal place of business in London, England. RSA is a
19 subscribing underwriter on the Policy.

20 (c) Brit Syndicate 2987 ("Brit") is an unincorporated Lloyd's of
21 London insurance syndicate, the members ("names") of which are unknown to Plaintiffs.
22 Brit acts through its managing agent, Brit Syndicates Limited. Brit is a subscribing
23 underwriter on the Policy.

24 (d) Markel Syndicate Management 3000 ("Markel") is an
25 unincorporated Lloyd's of London insurance syndicate, the members ("names") of which are

26

COMPLAINT - 3

unknown to Plaintiffs. Markel acts through its managing agent, Markel Syndicate Management Limited. Markel is a subscribing underwriter on the Policy.

        (e)    QBE Marine & Energy CSN 1036 ("QBE") is an unincorporated Lloyd's of London insurance syndicate, the members ("names") of which are unknown to Plaintiffs. QBE acts through its managing agent, QBE Underwriting Limited. QBE is a subscribing underwriter on the Policy.

        (f)    The Channel Syndicate 2015 ("Channel") is an unincorporated Lloyd's of London insurance syndicate, the members ("names") of which are unknown to Plaintiffs. Channel acts through its managing agent, The Channel Managing Agency Limited. Channel is a subscribing underwriter on the Policy.

        (g)    Neon 2468 ("Neon"), formerly known as Marketform 2468, is an unincorporated Lloyd's of London insurance syndicate, the members ("names") of which are unknown to Plaintiffs. Neon acts through its managing agent, Neon Underwriting Limited. Neon is a subscribing underwriter on the Policy.

        (h)    AGCS Marine Insurance Company ("AGCS") is a corporation organized under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois. AGCS is a subscribing underwriter on the Policy.

### Jurisdiction and Venue

5.    This Court has jurisdiction over the subject matter of this action pursuant to RCW 2.08.010 and RCW 7.24.010.

6.    This Court has jurisdiction over the Insurers by virtue of the Institute Service of Suit Clause (U.S.A.) in the Policy, pursuant to which the Insurers agreed to submit to the jurisdiction of a court of competent jurisdiction within the United States of America at the request of the Assureds.

7.    Venue is proper before this Court pursuant to RCW 48.05.220, which provides that "[s]uit upon causes of action arising within this state against an insurer upon

COMPLAINT - 4

an insurance contract shall be brought in the county where the cause of action arose." Venue is also proper under RCW 4.12.025.

### The Vessel Construction Contract

8. On or about December 22, 2015, North Star, as owner, and Eastern, as builder, entered into a Vessel Construction Contract for the construction of a new 261-foot fishing vessel (the "Vessel"). The agreed contract price for the new Vessel was approximately $72 Million. North Star was to provide "owner furnished equipment" not included within the scope of the Vessel Construction Contract valued at an additional $10.8 Million, bringing the total price of the Vessel to $82.8 Million.

### The Insurance Policy

9. In connection with the Vessel Construction Contract, North Star procured an all-risks builder's risk insurance policy through its Seattle-based broker, Arthur J. Gallagher Risk Management Services, Inc. The Policy bears policy number FIS-16-001 and unique market reference number B0713MAHHY1603684 and was issued in Seattle, Washington. The Policy was effective January 15, 2016 and extended through November 1, 2018.

10. The defendant Insurers are each subscribing underwriters on the Policy. Each bears a specified percentage of the risk of the Policy as set forth in the Policy.

11. Defendant Norwegian Hull Club, as the lead underwriter, has acted and continues to act on behalf of all underwriters with respect to the Policy. The other defendant underwriters are bound by the actions of the lead underwriter and the consequences of those actions.

12. The Policy incorporates certain American Institute of Marine Underwriters Builder's Risk Clauses, a copy of which are included in full in the Policy.

COMPLAINT - 5

13. The "Hull Risks" clause of the Policy provides that the "Policy insures against all risks of physical loss of or damage to the Vessel occurring during the currency of this Policy, except as hereinafter provided."

14. The "Agreed Value" clause of the Policy provides in part:

> The Vessel, for so much as concerns the Assured, by agreement between the Assured and the Underwriters in this Policy, is and shall be valued at the completed contract price plus the value of materials and equipment destined for the Vessel but not included in such price. . . .
>
> The Agreed Value is provisionally declared as $_____, being the contract price of $_____ and $_____ for materials and equipment destined for the Vessel but not included in the contract price.

The Policy provides that the "Interest" insured includes "Hulls, Materials etc, Machinery, Outfit etc and everything connected therewith" and a "Final Contract Value: USD 77,000,000." The Policy further provides that the "Sum Insured" is "100% of value and amounts as herein." The USD 77,000,000 amount was derived in consultation with Norwegian Hull Club as lead underwriter prior to issuance of the Policy by excluding certain "soft costs" for naval architect fees and shipyard engineering fees (which are not subject to loss by casualty) from the total anticipated price of the Vessel and owner furnished equipment at inception. These provisions make it clear that the intent of the Policy was to fully insure the Vessel at 100% of its value.

15. The "Escalation" clause of the Policy provides:

> In the event of any increase or decrease in the cost of labor or materials, or in the event of any change in the specifications or design of the Vessel (not constituting a material change for purposes of the held covered provisions of the Subject Matter clause), the Agreed Value shall be adjusted accordingly, but any increase shall be limited to _____ per cent of the Agreed Value as provisionally declared, and the Amount Insured shall be adjusted proportionately; provided that the Assured shall pay premium at the full Policy rate on the total construction cost of the Vessel of this insurance, but the Underwriters shall in no event be liable under this Policy for more

COMPLAINT - 6

than the Agreed Value provisionally declared plus said percentage thereof.

The Policy leaves blank the space in the Escalation Clause where a percentage limit can be specified and does not elsewhere specify any percentage limit on increases pursuant to the Escalation Clause.

16. The Escalation Clause in the Policy avoids unintended under-insurance of the insured Vessel by entitling the Assureds to increase the coverage limits of the Policy *as a matter of right* in two independent circumstances: (1) an increase in the build cost of the Vessel, *or* (2) a change in the specifications or design of the Vessel. In consideration of any increase in the coverage limits, the Escalation Clause provides that upon escalation the Assureds "shall pay premium at the full Policy rate on the total construction cost of the Vessel . . . ."

17. The "Sue and Labor" Clause of the Policy provides in part:

> And in the case of any loss or Misfortune, it shall be lawful and necessary for the Assured . . . to sue, labor and travel for, in and about the defense, safeguard and recovery of the Vessel, or any part thereof, without prejudice to this insurance, to the charges whereof the Underwriters will contribute their proportion as provided below. . . .
>
> In the event of expenditure under the Sue and labor clause, the Underwriters shall pay the proportion of such expenses that the Amount Insured Hereunder bears to the Agreed Value, or that the Amount Insured Hereunder (less loss and/or damage payable under this Policy) bears to the actual value of the salved property, which proportion shall be less; provided always that their liability for such expenses shall not exceed their proportionate part of the Agreed Value.

The Sue and Labor Clause provides separate coverage, subject to a separate limit, for Sue and Labor expenses independent of coverage for repair costs under the "Hull Risks" clause of the Policy.

COMPLAINT - 7

**The Loss and Insurers' Unreasonable Denial of Coverage**

18. On or about October 10, 2018, as construction of the Vessel was nearing completion but before the Vessel was delivered or documented, the Vessel was struck by Hurricane Michael—a severe "Category 4" storm. In the course of the storm, the Vessel broke free from its moorings, drifted across a waterway and eventually grounded and flooded, sustaining extensive damage.

19. North Star gave timely notice to Norwegian Hull Club, as lead underwriter on the Policy, of the Assureds' claim under the Policy for repair of the damage the Vessel sustained in the hurricane, reimbursement of Sue and Labor expenses, and recovery of other associated expenses and losses in accordance with the provisions of the Policy.

20. Norwegian Hull Club, as lead underwriters on the Policy, has acknowledged that the claim falls within the coverages of the Policy.

21. Following the casualty, Eastern estimated that the repairs could be accomplished for less than $77 Million. As repairs proceeded, Eastern advised that the repair costs would exceed that amount.

22. In October of 2020, North Star notified Norwegian Hull Club that it was invoking the Escalation Clause of the Policy to procure insurance proceeds sufficient to pay Eastern's invoices for repair of the Vessel. In support of the escalation, North Star submitted Eastern's summary of its labor and materials costs for construction of the Vessel through the date of the casualty. Eastern's summary indicated that its actual labor and materials costs for construction of the Vessel (excluding owner furnished equipment outside the scope of the Vessel Construction Contract) through that date exceeded $98 Million. Eastern subsequently submitted documentation to the Lead Insurer substantiating the labor and materials costs as set forth on its summary.

23. The Insurers have repudiated the enforceability of the Escalation Clause of the Policy on grounds that are arbitrary, unreasonable and inconsistent with the express terms of the Policy.

24. The Insurers have asserted that because no numerical percentage is inserted in the blank in the Escalation Clause or otherwise specified in the Policy, the Escalation Clause does not apply and has effectively been stricken from the Policy. This argument is unreasonable for multiple reasons:

(a) The Insurers' inclusion of the Escalation Clause in the policy is inconsistent with the Insurers' claim that they did not want the Escalation Clause to be part of the Policy;

(b) The Insurers claim that they did not want the Escalation Clause to be part of the Policy is inconsistent with the Insurers' decision not to include any language in the Policy *purporting to strike or delete* the Escalation Clause;

(c) The Escalation Clause makes sense grammatically and can operate according to its terms without a percentage limitation being specified in the blank at issue;

(d) There are numerous other standard American Institute of Marine Underwriters Builder's Risk Clauses attached to and incorporated in the Policy containing blanks that have not been repudiated by the Insurers;

(e) The Policy prominently provides: "Regardless of who may have drafted or prepared this policy or any portions thereof, the provisions contained herein *shall be deemed to have been authored by the Insurer(s)*." (emphasis supplied); and

(f) If the Insurers intended to strike the Escalation Clause from the Policy, they had a duty to say so in unambiguous terms.

25. The Insurers also assert that the Escalation Clause provides no coverage for increases in the cost of labor or materials unless the burden of the increase falls on the

vessel owner (here, North Star) rather than the builder (Eastern).  This argument is not reasonable for at least two reasons:

(a) Eastern, as builder, is *also* a named Assured under the Policy, entitled to the protection and benefits of all of the Policy's provisions, including the Escalation Clause; and

(b) By its explicit terms, the Escalation Clause provides for the increase in coverage limits under two *independent* circumstances:  (i) "any increase or decrease in the cost of labor or materials," *or* (ii) "in the event of a change in the specifications or design of the Vessel . . . ."  The Insurers' argument ignores the first circumstance, which does not require an increase in the contract price for escalation to become available.

26. The Insurers unreasonably assert that the Escalation Clause can be invoked to increase the coverage limits of the Policy only *before* a casualty occurs.  Nothing in the language of the Escalation Clause or elsewhere in the Policy imposes any such requirement.  The Policy explicitly contemplates escalation of coverage limits *after the fact* of any increase in the cost of labor or materials and requires payment of premium on the "total construction cost of the Vessel" at the full Policy rate, which North Star has offered.

27. The Insurers have wrongfully denied North Star the benefit of the separate coverage afforded by the Sue and Labor Clause of the Policy on grounds that are arbitrary, unreasonable and inconsistent with the terms of the Policy.  The Insurers contend that the Assureds are not entitled to *any* Sue and Labor coverage because, according to the Insurers, the repair costs have exhausted the original "Hull Risks" coverage limits of the Policy.  The Insurers' position is arbitrary and unreasonable for several reasons:

(a) The Insurers' position ignores the fact that the coverage provided by the Sue and Labor Clause of the Policy is separate from the "Hulls Risks" coverage for repair costs and subject to separate limits;

(b) The Insurers' position ignores the escalation of the "Hull Risks" coverage limits to which the Assureds are entitled by virtue of the Escalation Clause, as discussed above;

(c) The Insurers' position ignores the fact that the substantial Sue and Labor expenses incurred to refloat and protect the Vessel were undertaken for the benefit of the Insurers as well as the Assureds;

(d) The Insurers' position ignores the fact that a substantial portion of the Sue and Labor expenses incurred to refloat and protect the Vessel were undertaken by the Insurers themselves or at the request of the Insurers;

(e) The Insurers' position ignores the fact that the Insurers paid a substantial portion of the Sue and Labor expenses to third parties retained by or at the direction of the Insurers;

(f) The Insurers' position ignores the fact that the Insurers approved *all* the Sue and Labor expenses.

(g) The Insurers' position ignores that when the Sue and Labor expenses were being incurred the Insurers did not disclose to the Assureds that the Insurers would try to recoup these expenditures as a set-off against repair costs owed under the separate "Hull Risks" coverage of the Policy;

(h) The Insurers have failed to provide a detailed written calculation to support the Insurers' position and have incorrectly claimed credit for unpaid funds admittedly owed to the Assured.

28. The Insurers have wrongfully disputed several million dollars of costs incurred to protect and preserve the Vessel and mitigate the extent of damage as not constituting Sue and Labor expenses.

COMPLAINT - 11

29. By repudiating the Escalation Clause and denying full reimbursement of covered expenses under the Sue and Labor Clause of the Policy, the Insurers have acted as if those sections had been stricken from the Policy.

30. From October of 2020 through May of 2021, North Star has exchanged extensive correspondence with the Insurers in an attempt to persuade them to honor the terms of the Policy, but the Insurers have refused to change their position or grant the additional insurance benefits to which North Star is entitled under the Policy.

31. The Insurers have admitted to withholding amounts due under the Policy to increase the Insurers' leverage in negotiations. Although the Insurers have more recently characterized these tactics as a "misunderstanding," as of the date of this Complaint the amounts have been withheld for over six months and remain unpaid.

32. By letter dated August 26, 2021, North Star and Eastern demanded that the Insurers honor their obligations under the Escalation and Sue and Labor Clauses of the Policy and pay in full all costs incurred to repair the Vessel and costs incurred to refloat and protect the Vessel. In their demand letter, North Star and Eastern also requested that the Insurers submit to venue in this Superior Court of Washington for King County, pursuant to the Institute Service of Suit Clause (U.S.A.) of the Policy.

33. In a further act of bad faith, and in breach of their explicit contractual promise to submit to the jurisdiction of a court of competent jurisdiction "*at the request of the Assured[s]*", the Insurers have responded to the Assureds' demand letter by filing a preemptive declaratory judgment action against the Assureds in the United States District Court for the Northern District of Florida, titled *Norwegian Hull Club, et al. v. North Star Fishing Company LLC, et al.*, Case No. 5:21-cv-00181-RH-MJF.

34. The Insurers' wrongful conduct has caused the Assureds to suffer losses including, without limitation, a shortfall in the amounts necessary to repair the Vessel and in the reimbursement of expenses reasonably incurred to refloat and preserve the Vessel and

COMPLAINT - 12

mitigate damages to the Vessel from the storm.  The amounts of these losses will be proven at trial.  The total losses sustained by North Star and Eastern are estimated to be in excess of $26 Million.

## Causes of Action

### Count 1:  Breach of Contract

35. North Star and Eastern reallege all previous allegations set forth above.

36. Through the acts and omissions described above, the Insurers have breached the Policy, by refusing to honor the Assureds' rights under the Escalation Clause and the Sue and Labor Clause of the Policy and withholding payments and benefits to which the Assureds are entitled under those sections of the Policy.

37. The Insurers have also breached the implied covenant of good faith and fair dealing.

38. As a direct and proximate result of this breach, North Star and Eastern have suffered foreseeable damages, both direct and consequential, in an amount to be proven at trial.

39. The Insurers are liable to North Star and Eastern for all such damages for breach of contract.

### Count 2:  Insurance Bad Faith

40. North Star and Eastern reallege all previous allegations set forth above.

41. The Insurers owe the Assureds a duty of good faith and fair dealing.  Pursuant to that duty, the Insurers are obligated to refrain from denying coverage based on arbitrary, unreasonable or otherwise unfounded interpretations of the Policy.  The Insurers are likewise required to deal fairly with the Assureds and to give equal consideration to (and not put their own interests ahead of) the Assureds' financial interests.

42. Through the acts and omissions described above, the Insurers breached their duty of good faith and fair dealing.

43. As a direct and proximate result of this conduct, North Star and Eastern have suffered damages in an amount to be proven at trial.

44. The Insurers are liable to North Star and Eastern for all such damages under the Washington common law of insurance bad faith.

**Count 3:  Violation of the Washington Consumer Protection Act, RCW 19.86**

45. North Star and Eastern reallege all previous allegations set forth above.

46. Washington has adopted the Unfair Claims Settlement Practices Regulation (the "UCSPR"), set forth in Chapter 284-30, *et seq.* of the Washington Administrative Code.  Through the acts and omissions described above, the Insurers have violated the UCSPR, including WAC 284-30-330(1) and (13), by failing to provide a reasonable basis for their denial of insurance benefits and by misrepresenting pertinent provisions of the Policy in relation to North Star's and Eastern's losses—specifically, the Escalation Clause and the Sue and Labor Clause.

47. Violations of these provisions of the UCSPR are *per se* violations of the Washington Consumer Protection Act (the "CPA"), RCW 19.86, entitling North Star and Eastern to exemplary damages, attorneys' fees and costs.  The Insurers' unreasonable denial of coverage likewise is a violation of the CPA.

48. As a direct and proximate result of this conduct, North Star and Eastern have suffered damages in an amount to be proven at trial.

49. The Insurers are liable to North Star and Eastern under the CPA for all such damages.

**Count 4:  Violation of the Insurance Fair Conduct Act, RCW 48.30**

50. North Star and Eastern reallege all previous allegations set forth above.

51. By its terms, the Assureds' August 26, 2021 demand letter constituted the Assureds' written 20-day IFCA notification to the Insurers and the Office of the Washington Insurance Commissioner, in accordance with RCW 48.30.015(8)(a), setting forth

COMPLAINT - 14

the basis of North Star's IFCA cause of action.  Twenty days have passed since the Assureds' IFCA notice, and the Insurers have failed to resolve the basis for the Assureds' IFCA cause of action and declined to reconsider their unreasonable denial of coverage.

52. Through the acts and omissions described above, the Insurers have arbitrarily, unreasonably and unlawfully denied North Star's and Eastern's claims for coverage and payment of benefits under the Escalation and Sue and Labor Clauses of the Policy.  The Insurers' actions are in violation of the IFCA, entitling North Star and Eastern to actual, compensatory and treble damages, together with attorneys' fees and costs.

53. As a direct and proximate result of the Insurers' violation of the IFCA, North Star and Eastern have suffered damages in an amount to be proven at trial.

54. The Insurers are liable to North Star and Eastern under the IFCA for all such damages.

### Count 5:  Declaratory Judgment, RCW 7.24

55. North Star and Eastern reallege all previous allegations set forth above.

56. In light of the Insurers' refusal to acknowledge and honor the Assureds' rights under the Escalation and Sue and Labor Clauses of the Policy, North Star and Eastern are entitled to a declaratory judgment providing that the Policy is enforceable in accordance with its terms and determining the rights and obligation of the parties.

### Request for Relief

WHEREFORE, North Star and Eastern request the following relief:

1. That North Star and Eastern be awarded a money judgment against the Insurers, in an amount to be proved at trial;

2. That North Star and Eastern be awarded exemplary or treble damages pursuant to the CPA and the IFCA;

3. That North Star and Eastern be awarded their attorneys' fees, costs and litigation expenses pursuant to the CPA, the IFCA and/or the *Olympic Steamship* rule, or as otherwise allowed by law;

4. That North Star and Eastern be awarded declaratory judgment enforcing the Policy according to its terms and determining the rights and obligations of the parties;

5. That North Star and Eastern be awarded pre-judgment and post-judgment interest; and

6. That North Star and Eastern be awarded such other and further relief as the Court may deem just and proper.

DATED this 23rd day of September, 2021.

MUNDT MacGREGOR L.L.P.

By  /s/ J. David Stahl
   J. David Stahl
    WSB No. 14113
   jdstahl@mundtmac.com
   271 Wyatt Way NE, Suite 106
   Bainbridge Island, WA  98110
   (206) 624-5950

SPENCER HALL PLLC

By   /s/ Spencer Hall
   Spencer Hall
    WSB No. 6162
   shall@sh-assoc.com
   316 Occidental Ave. S., Suite 500
   Seattle, WA  98104
   (206) 292-5900

Attorneys for Plaintiff, North Star Fishing Company LLC

COMPLAINT - 16

GORDON TILDEN THOMAS & CORDELL LLP

By  /s/ Franklin D. Cordell
    Franklin D. Cordell
    WSB No. 26392
    fcordell@gordontilden.com

By  /s/ Greg Pendleton
    Greg Pendleton
    WSB No. 38361
    gpendleton@gordontilden.com

    600 University Street, Suite 2915
    Seattle, WA 98101
    (206) 467-6477

Attorneys for Plaintiff, Eastern Shipbuilding Group, Inc.

COMPLAINT - 17