UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

NORWEGIAN HULL CLUB, as leading )
underwriter subscribing to Builder's Risk )
Policy No. MAHHY1603684, for and on ) No.: 5:21-cv-00181-RH-MJF
behalf of subscribing underwriters as )
their interests may appear ROYAL & )
SUN ALLIANCE INSURANCE PLC, )
Lloyd's Syndicates: BRIT SYN – 2987, )
MARKEL SYN – 3000, QBE SYN – 1036, )
CHANNEL SYN – 2015, and NEON SYN )
– 2468, and ALLIANZ GLOBAL )
CORPORATE & SPECIALTY MARINE )
INSURANCE COMPANY, )
)
            Plaintiffs, )
)
vs. )
)
NORTH STAR FISHING COMPANY )
LLC and EASTERN SHIPBUILDING )
GROUP, INC., )
)
            Defendants. )
_____ )

## MEMORANDUM IN SUPPORT OF DEFENDANT NORTH STAR'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendant North Star Fishing Company LLC ("North Star")

submits this memorandum in support of its motion to dismiss plaintiffs'

First Amended Complaint for Declaratory Relief (Dkt. # 18) in favor of the

parallel proceeding between these same parties now pending in the United States District Court for the Western District of Washington at Seattle.[1]

## SUMMARY OF ARGUMENT

The Court should exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, to abstain from entertaining this anticipatorily-filed declaratory action. Washington has the closer nexus to, and greater interest in, this insurance coverage dispute. Washington also is where the U.S.-based witnesses and documents "relevant to the inception and interpretation" of the insurance policy at issue are located. *See Collegiate Leasing Co. v. American Cas. Co. of Reading, Pa.*, 713 F.3d 71, 80 (11th Cir. 2013).

The subject insurance policy (the "Policy") was *issued in Washington*.[2] The Policy was procured by North Star (formerly known as Iquique U.S., LLC), a Seattle-based fishing company, through its Seattle-based broker, Arthur J. Gallagher Risk Management, Inc. ("Gallagher"),

---

[1] On October 21, 2021, the Insurers removed the parallel Washington state court action filed by North Star and Eastern Shipbuilding Group, Inc. ("Eastern") to the U.S. District Court for the Western District of Washington at Seattle. *North Star Fishing Company LLC, et al. v. Norwegian Hull Club, et al.*, Case No. 2:21-cv-01438-JLR (W.D. Wash.).

[2] Declaration of James C. Johnson ¶ 4 and Exh. A (Dkt. 11-1 at 2-3, 7)

who in turn placed the Policy through Lockton Companies LLP in London.[3]  Eastern was added as a co-named Assured.[4]

With the exception of AGCS Marine Insurance Company, which is organized and headquartered in Illinois, all of the plaintiff insurers ("Insurers") subscribing to the Policy are *foreign* insurers.  The lead underwriter, Norwegian Hull Club, is based in Bergen, Norway.  The others are insurance companies or Lloyd's insurance syndicates based in England.  None is a citizen of Florida.[5]

Having procured the Policy through its Seattle-based broker, North Star also led the administration of the insurance claim arising from the October 10, 2018 Hurricane Michael casualty.[6]  Virtually all post-casualty coverage-related communications between the parties—including those referenced in paragraphs 43 through 54 of the Amended Complaint—were between North Star's Seattle-based Vice-President,

---

[3]  *Id.* (Dkt. 11-1 at 2-3, 6-35); First Amended Complaint for Declaratory Relief ("Amended Complaint") ¶ 26 (Dkt. 18 at 9).

[4]  *Id.*

[5]  Amended Complaint ¶¶ 1-10 (Dkt. 18 at 2-4).

[6]  *See* Supplemental Declaration of James C. Johnson ¶ 9 (filed herewith).

James Johnson, and Tonje Knudsen, a Senior Claims Handler and Adjuster with Norwegian Hull Club in Bergen, Norway. Eastern was copied on that correspondence.[7]

Washington's interest in adjudicating whether the Insurers have complied with their obligations under a Policy issued in Washington to a Washington insured through a Washington broker is manifest, as evidenced by the Washington Insurance Fair Conduct Act, RCW 48.30.015, Washington's statutory prohibition of binding arbitration clauses and foreign choice of law clauses in insurance policies issued in Washington, RCW 48.18.200, and the Washington Legislature's pronouncement that "the business of insurance affects the public interest," RCW 48.01.030. S*ee also State Dept. of Transp. V. James River Ins. Co.*, 176 Wn.2d 390, 399, 292 P.3d 118, 123 (2013) (RCW 48.18.200 demonstrates legislature's intent to protect the right of policyholders to bring original action against the insurer in the courts of the state and helps assure the protection of Washington law to Washington insureds).

To be sure, Florida also has an interest here, by virtue of the

---

[7]  Supp. Johnson Decl. ¶ 10.

Policy naming Eastern as a co-assured and insuring a vessel under construction at Eastern's shipyard in Panama City. But Florida's interest cannot be said to be paramount under these circumstances.

All of these considerations weigh in favor of this Court's abstention in favor of the parallel Washington action.

That the Insurers engaged in a "race to the courthouse" in this forum does not change the abstention analysis, because this action is a textbook example of an anticipatorily-filed suit. The Insurers admit filing this action in response to their Assureds' August 26, 2021 pre-suit notice letter, advising that North Star and Eastern intended to commence litigation in the Superior Court of Washington for King County if the Insurers did not promptly comply with their obligations under the Policy.[8] Although none is a citizen of Florida, the Insurers raced to file a declaratory judgment action in this forum, apparently perceiving that Florida's choice-of-law rules for insurance bad faith claims offers them substantive advantage here.

---

[8] Amended Complaint ¶¶ 22-23, 55-57 (Dkt. 18 at 8, 17-18); Declaration of J. David Stahl, Exh. A (Dkt. 11-2 at 5-11).

"The anticipatory suit exception to the first-file rule applies when one party, on notice of a potential lawsuit, files a declaratory judgment action." *Collegiate Licensing Co.*, 713 F.3d at 79 (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005)); *accord Ven-Fuel, Inc. v. Dept. of the Treasury*, 673 F.2d 1194 (11th Cir. 1982); *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661 (5th Cir. 1967). Under such circumstances, the Court is within its discretion to dismiss the first-filed action. *Ven-Fuel, Inc.*, 673 F.2d at 1195; *Amerada Petroleum,* 381 F.2d at 663-64; *Manuel*, 430 F.3d at 1137 ("our precedent stands for the proposition that the district court did not abuse its discretion in relying on that fact to dismiss the action") (citing *Ven-Fuel*). The Court should do so here, rather than reward the Insurers for their sharp tactics.

## FACTUAL AND PROCEDURAL BACKGROUND

North Star is a fishing company organized under the laws of Washington with its headquarters in Seattle, Washington. Amended Complaint ¶ 11 (Dkt. 18 at 5). In December of 2015, North Star entered into a contract with Eastern for the construction of a new vessel (eventually to be named the "NORTH STAR") at Eastern's shipyard in Panama City. *Id.*

¶ 25.  In connection with the new vessel construction project, North Star procured the builders risk Policy that is the subject of this declaratory judgment action.  *Id.* ¶ 26.  Eastern was added as a co-named Assured.  *Id.*

North Star procured the Policy in Washington through Gallagher, its Seattle-based broker.  Johnson Decl. ¶ 4, Exh. A (Dkt. 11-1 at 2, 6-8).  The Policy was issued in Seattle, Washington on January 20, 2016, as stated on the second page of the Policy.  *Id.*  No one located in Florida was involved in communications with the Insurers regarding the procuring, placement or issuance of the Policy.  Supp. Johnson Decl. ¶ 6.  Eastern was presented with and approved the Policy after its issuance.  *Id.* ¶ 4.

Eastern launched the vessel from its slipway on April 19, 2018, but the vessel was far from completed at that point.  Johnson Decl. ¶ 6 (Dkt. 11-1 at 3).  On October 10, 2018, the NORTH STAR was caught by Hurricane Michael as the eye of the storm passed over Panama City.  Amended Complaint ¶¶ 14, 36.  The NORTH STAR broke loose from its mooring, drifted across a waterway, grounded and flooded, sustaining substantial damage.  *Id.*; Johnson Decl ¶ 7 (Dkt. 11-1 at 3).

North Star took the lead in administering the insurance claim arising from the casualty, with the full participation and cooperation of Eastern. Supp. Johnson Decl. ¶ 9. In the course of the claim, substantial disputes arose between the Assureds and the Insurers regarding the extent of coverage available to North Star and Eastern under the Policy, particularly with respect to the Escalation Clause of the Policy. Amended Complaint ¶¶ 43-54. The parties exchanged a series of correspondence regarding those coverage disputes over several months. *Id.* Virtually all of this correspondence was between Mr. Johnson, of North Star, and Ms. Knudsen of Norwegian Hull Club, the lead underwriter on the Policy, who is located in Bergan, Norway. Supp. Johnson Decl. ¶ 10. Eastern was copied on all, or virtually all, of this correspondence. *Id.*

After months of correspondence failed to resolve the disputes, North Star and Eastern jointly issued a pre-suit notice letter to the Insurers on August 26, 2021. Amended Complaint ¶¶ 22, 55; Stahl Decl. ¶ 2, Exh. A (Dkt. 11-2 at 5-11). The Assureds' pre-suit notice letter stated that it was intended to fulfill the pre-suit notice requirements of both the Washington Insurance Fair Conduct Act, RCW Chapter 48.30, and the Florida Insurance

Bad Faith Statute, Fla. Stat. § 624.155.  *Id.*  As the Insurers acknowledge, the

notice letter advised the Insurers that North Star and Eastern intended *"to*

*pursue legal action to enforce their rights under the Policy and obtain legal redress*

*for the Insurers' bad faith unless the Insurers promptly comply with their*

*obligations."*  *Id.*; Amended Complaint ¶ 55.  The letter also requested *"that*

*the Insurers submit to venue in the Superior Court of Washington for King*

*County, pursuant to the Institute Service of Suit Clause (U.S.A.) of the Policy."*

*Id.*

The Insurers commenced the present declaratory action on

September 9, 2021—just 14 days after receiving the Assureds' pre-suit

notice letter.  Complaint for Declaratory Judgment ¶¶ 8, 9 and 33 (Dkt. 1 at

4-5, 12).  The Insurers ignored the Assureds' request that the Insurers

submit to venue in the Superior Court of Washington for King County as

the forum for resolution of these disputes.

Promptly after the 20 day pre-suit notice period under the

Washington Insurance Fair Conduct Act expired, North Star and Eastern

commenced their action against the Insurers in the Superior Court of

Washington for King County, asserting claims for breach of contract,

common law insurance bad faith, breach of the Washington Consumer Protection Act, breach of the Washington Insurance Fair Conduct Act, and declaratory judgment.  Stahl Decl. ¶ 3, Exh. B (Dkt. 11-2 at 13-39).  The parties in the parallel proceeding pending in Washington are identical to the parties in this action.  *Id.*

On September 29, 2021, North Star moved this Court to dismiss the Insurers' original Complaint for lack of subject matter jurisdiction or, alternatively, to abstain from entertaining this action in the exercise of its discretion under the Declaration Judgment Act.  (Dkt. 9).  Eastern filed its Notice of Joinder to North Star's motion on October 4.  (Dkt. 15).  The Insurers filed their Amended Complaint on October 12 but did not otherwise respond to the Assureds' motion.  (Dkt. 18).

On October 21, the Court entered its Order Denying as Moot the Motion to Dismiss the Original Complaint.  (Dkt. 20).  In the Order, the Court ruled that North Star and Eastern were correct that the case is not within the Court's admiralty jurisdiction and that the declaratory judgment statute does not provide an independent basis for subject matter jurisdiction.  The Court further ruled, however, that the Insurers' Amended

Complaint apparently included allegations sufficient to bring the case within the Court's diversity jurisdiction, and on that basis denied as moot the motion to dismiss the original Complaint. The Court invited the Assureds to again present the abstention issue in any motion directed to the Insurers' Amended Complaint.

On the same day, the Insurers notified this Court that they had removed the Assureds' Washington state court action to the U.S. District Court for the Western District of Washington. *See* Plaintiffs' Notice of Similar Case (Dkt. 22). In their Notice, the Insurers advise that they intend to seek a stay of the Washington action and an order transferring that action—as the "second-filed" action—to this Court. *Id.* at 3.

## ARGUMENT AND AUTHORITIES

### I. The Court Should Decline to Entertain This Anticipatorily-Filed Declaratory Action In Favor of the Parallel Proceeding Pending Between These Same Parties In Washington.

#### A. Removal of the Assureds' Washington State Court Action Does Not Impair this Court's Discretion to Abstain from Hearing this Declaratory Action.

A district court's discretion to abstain from hearing a declaratory judgment action in favor of a parallel proceeding in a more

appropriate forum is not limited to situations where the parallel

proceeding is pending in state court. *See, e.g., Ven-Fuel,* 673 F.2d at 1195

(affirming district court's abstention in favor of pending proceeding in

another federal court); *Amerada Petroleum,* 381 F.2d at 663-64 (same). This is

because the Declaratory Judgment Act, 28 U.S.C. § 2201, is only "'an

enabling Act, which confers a discretion on courts rather than an absolute

right upon the litigant.'" *Ameritas,* 411 F.3d at 1330 (quoting *Wilton v. Seven*

*Falls Co.,* 515 U.S. 277, 287, 115 S.Ct. 2137, 2143 (1995)). The Act "only gives

the federal courts competence to make a declaration of rights; *it does not*

*impose a duty to do so*." *Id.* (citing *Brillhart v. Excess Ins. Co. of America*, 316

U.S. 491, 494, 62 S.Ct. 1173, 1175 (1942)) (emphasis supplied). As the

Supreme Court explained in *Wilton*,

> We agree, for all practical purposes, with Professor
> Borchard, who observed a half century ago that
> "[t]here is . . . nothing automatic or obligatory about the
> assumption of 'jurisdiction' by a federal court" to hear a
> declaratory judgment action. [citation omitted] By the
> Declaratory Judgment Act, Congress sought to
> place a remedial arrow in the district court's quiver;
> it created an opportunity, rather than a duty, to
> grant a new form of relief to qualifying litigants.
> Consistent with the nonobligatory nature of the
> remedy, a district court is authorized, in the sound
> exercise of its discretion, to stay or to dismiss an

> action seeking declaratory judgment before trial or
> after all arguments have drawn to a close. *In the
> declaratory judgment context, the normal principle that
> federal courts should adjudicate claims within their
> jurisdiction yields to considerations of practicality and
> wise judicial administration.*

515 U.S. at 288, 115 S.Ct. at 2143 (emphasis supplied).

The Insurers' removal of the Assureds' Washington state court action to federal court may mitigate at least some of the state-federal comity considerations underlying the nine non-exclusive factors the Eleventh Circuit identified in its *Ameritas* and, most recently, *Independent Order of Foresters* decisions.[9]  However, the removal by no means impairs this Court's discretion to abstain from hearing this declaratory action where, as here, the declaratory action was filed in anticipation of a parallel proceeding between the same parties that is now pending in a demonstrably more appropriate federal forum in Washington.

B.  The Anticipatory Suit Exception to the First-Filed Rule Negates the Presumption that This Court Should Retain Jurisdiction Merely Because the Insurers Engaged in a Race to the Courthouse.

"The anticipatory suit exception to the first-filed rule applies

---

[9]  *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005); *Independent Order of Foresters v. Gold-Fogel*, ___ F.4th ___, 2021 WL 4891426, No. 20-14310 (11th Cir. Oct. 20, 2021).

when one party, on notice of a potential lawsuit, files a declaratory judgment action." *Collegiate Licensing Co.*, 713 F.3d at 79.  That the Insurers' declaratory action in this forum is an anticipatory suit is beyond dispute. The Insurers admit as much in paragraphs 22 and 23 of their Amended Complaint.  (Dkt. 18 at 8) (referencing the Assured's August 26, 2021 pre-suit notice letter and then requesting "an adjudication of their obligations, if any, to pay the contested amounts in excess of the limits under the Policy demanded by the Assureds.").  Courts in Washington have expressly held that declaratory actions filed in response to pre-suit notice letters under the Washington Insurance Fair Conduct Act are anticipatory suits.  *See, e.g. Keystone Fruit Marketing, Inc. v. National Fire Ins. Co. of Hartford*, 2011 WL 3293390 *5 (E.D. Wash. Aug. 1, 2011) (declaratory action filed thirteen days after pre-suit notice letter and seven days before insured could bring suit indicative of an anticipatory action); *cf., Nautilus Ins. Co. v. All Insurance Restoration Services, Inc.*, 2021 WL 2043418 *3, No. 4:20-cv-505-AW-MAF (N.D. Fla. April 23, 2021) (declaratory action filed after receipt of letter advising assured would file suit in five days if insurer continued to refuse coverage an anticipatory filing).

Although the anticipatory suit exception does not "automatically compel" the Court to abandon the first-filed rule, *see Collegiate Licensing Co.*, 713 F.3d at 79, it is among the equitable circumstances that the Court may rely upon to abstain from entertaining a first-filed declaratory action in favor of a more appropriate forum. *See, e.g., Ven-Fuel*, 673 F.2d at 1195 (district court within its discretion in declining to entertain first-filed declaratory action on basis of anticipatory suit exception); *Amerada Petroleum*, 381 F.3d at 663 (anticipatory nature of first-filed declaratory action was an equitable consideration the district court was entitled to take into account in refusing to hear the action); *Manuel*, 430 F.3d at 1135, 1137 ("our precedent stands for the proposition that the district court did not abuse its discretion in relying on that fact to dismiss the action.") (citing *Ven-Fuel)*.

In short, this Court may invoke the anticipatory suit exception to negate any presumption that the Insurers' declaratory action should proceed here merely because the Insurers engaged in a race to the courthouse. North Star respectfully submits that the Court should do so and dismiss this action in favor of the parallel proceeding in Washington.

C. Washington is the More Appropriate Forum for the Adjudication of a Coverage Dispute over an Insurance Policy Procured by a Washington Insured, Placed by a Washington Broker, and Issued in Washington.

"The factors relevant to deciding whether to hear a declaratory judgment action are equitable in nature," *Manuel*, 430 F.3d at 1135 (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221 (1952)), and "the range of considerations available to the district court in deciding whether to entertain the declaratory action is vast." *Id.* at 1137-38. As a result, the deference afforded to the district court's decision is substantial. *Id.*

As discussed in Section B above, the fact that a declaratory action is filed in anticipation of an imminent proceeding in another forum is a sufficient equitable basis on which the district court may rely to dismiss the action. *Ven-Fuel*, 673 F.2d at 1195; *Manuel*, 430 F.3d. at 1137. The Eleventh Circuit also has recognized "convenience of the parties and the forum's connection with the controversy" as relevant, albeit nonexclusive factors. *Manuel*, 430 F.3d at 1135 (citing *Amerada Petroleum*, 381 F.2d at 663); *Collegiate Licensing Co.*, 713 F.3d at 79-80. As noted in *Manuel*, some courts apply the same general factors that are considered on a motion to transfer

under 28 U.S.C. § 1404(a), but again, those factors are not exclusive. *Manuel*, 430 F.3d at 1135, n.1.

All of these equitable factors point overwhelmingly to Washington, not Florida, as the more appropriate forum for the adjudication of this insurance coverage dispute. The Insurers' declaratory action here was an anticipatory filing, the convenience of the parties and the availability of witnesses and documents favors Washington, and Washington has a closer connection to, and greater interest in, this dispute.

The Policy was issued in Washington to a Washington insured through a Washington broker. Supp. Johnson Decl. ¶ 4 . No one located in Florida was involved in communications with the underwriters regarding the placement of the Policy. *Id.* ¶ 6. Aside from the witnesses and documents located in Great Britain or Norway, the U.S.-based witnesses and documents relevant to the "inception and interpretation" of the Policy are necessarily located in Washington, where the Policy was procured and issued, not in Florida. *See Collegiate Licensing Co.*, 713 F.3d at 80.

North Star acknowledges that Florida also has a connection to this dispute. The insured risk was located at the Panama City shipyard

facilities of Eastern, a co-Assured under the Policy, and the casualty

occurred there.  But in a coverage dispute such as this, a forum's nexus to

the *issuance* of the Policy is the more important consideration than where

the casualty occurred.  *See Collegiate Licensing Co.*, 713 F.3d at 80 (affirming

the Georgia district court's retention of jurisdiction, noting that there was

no evidence that any witnesses or documents "relevant to the inception

and interpretation" of the policies at issue were located in California,

where the parallel proceeding was pending).  Here, the U.S.-based

witnesses relevant to the procurement, placement and issuance of the

subject Policy are located in Washington, not Florida.   Supp. Johnson Decl.

¶ 5.

As the state in which the Policy was issued to a Washington

insured through a Washington broker, Washington has the greater interest

in the adjudication of whether the Insurers complied with their obligations

under the Policy.  That interest is evidenced by the Washington Insurance

Fair Conduct Act, RCW 48.30.15, and other provisions of Washington's

insurance code, including those preserving an insured's right to bring an

original action against an insurer in the courts of Washington under the

protection of Washington law.  RCW 48.18.200; *James River Ins. Co.*, 176 Wn.2d at 399, 292 P.3d at 123.

At the end of the day, the Court is faced with three sets of parties to this dispute, two of whom chose Washington as the appropriate forum and informed the third of their choice.  The third is attempting to impose a different choice of venue using tactics and reasoning that do not measure up to applicable judicial standards.

Eastern, the only Florida citizen to this dispute, chose Washington as the appropriate venue.  North Star, which is a citizen of Washington, chose Washington as the appropriate venue.  However, the Insurers, none of whom is a citizen of Florida, seek to impose a Florida venue even though they will suffer no inconvenience or prejudice having to litigate this dispute in Washington.  As in *Amerada Petroleum*, the Insurers here are "not in the position of one who cannot obtain an adjudication of its legal rights; the only question here is in which of two jurisdictions should that adjudication take place."  381 F.2d at 663.

So the question must be asked, why have the Insurers raced to the courthouse to select this forum?  It appears that the answer may be that

the Insurers perceive a choice of law advantage in this forum.  A federal

court sitting in diversity will apply the choice of law rules for the state in

which it sits.  *Manuel,* 430 F.3d at 1139.  Insurance bad faith claims sound in

tort in Washington, thus triggering application of Washington's "most

significant relationship" choice of law rule for torts under the Restatement

(Second) of Conflict of Laws, § 145.  S*ee, e.g., MKB Constructors v. American

Zurich Ins. Co.*, 49 F.Supp.3d 814, 832 (W.D. Wash. 2014).  By contrast, there

is authority that insurance bad faith claims sound *in contract* in Florida.

*See, e.g., Pastor v. Union Central Life Ins. Co.*, 184 F.Supp.2d 1301, 1304-06

(S.D. Fla. 2002).  If their declaratory action is allowed to proceed here,

North Star expects the Insurers will later argue that the choice of law clause

in the Policy, providing that "[t]his policy shall be governed by the Laws of

The State of: New York," requires that New York law, rather than *either*

Florida or Washington law, should govern North Star's and Eastern's

insurance bad faith claims.  But there is authority that New York *does not*

*recognize* a claim for insurance bad faith independent of a claim for breach

of the insurance contract.  *See, e.g., Newmont USA Ltd. v. American Home

Assur. Co.*, 676, F.Supp.2d 1146, 1162-63 (E.D. Wash. 2009) (comparing

MEMORANDUM IN SUPPORT OF DEFENDANT
NORTH STAR'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT - 20

Washington and New York insurance bad faith law).

North Star concedes *none* of these arguments, authorities or conclusions, including without limitation the enforceability of the choice of law clause in the Policy invoking New York law.[10]  However, it seems apparent that the Insurers raced to file in this forum in an attempt to insulate themselves from potential liability for bad faith under *either* Washington or Florida law if their coverage positions under the Policy are found to be erroneous or unreasonable.

## CONCLUSION

For the foregoing reasons, North Star respectfully requests that the Court exercise its discretion under the Declaratory Judgment Action to dismiss this anticipatorily-filed declaratory action without prejudice in favor of the parallel proceeding pending between these same parties in Washington.

---

[10]  The Washington insurance code provides that a choice of law provision purporting to require an insurance policy issued in the state to be construed according to the laws of a state or country *other than* Washington is void.  RCW 48.18.200(1)(a).

## CERTIFICATION OF WORD COUNT

I hereby certify that this document complies with the word limits set forth in Rule 7.1 of the Local Rules and contains 4,367 words.

DATED this 4th day of November, 2021.

GUILDAY LAW, P.A.

By *s/Thomas J. Guilday*
    Thomas J. Guilday • FBN 0181872
    1983 Centre Pointe Boulevard, Suite 200
    Tallahassee, Florida 32308
    Primary: tom@guildaylaw.com
    Secondary: beth@guildaylaw.com
    Telephone: (850) 224-7091

MUNDT MacGREGOR L.L.P.

By *s/ J. David Stahl*
    J. David Stahl
     WSB No. 14113
    271 Wyatt Way NE, Suite 106
    Bainbridge Island, Washington  98110
    Primary: jdstahl@mundtmac.com
    Secondary: tdrifmeyer@mundtmac.com
    Telephone: (206) 624-5950

SPENCER HALL PLLC

By *s/Spencer Hall*
    Spencer Hall
     WSB No. 6162
    316 Occidental Avenue S., Suite 500
    Seattle, Washington  98104

Primary: shall@sh-assoc.com
Secondary: kbenedict@sh-assoc.com
spierce@sh-assoc.com
Telephone: (206) 292-5900

*Attorneys for Defendant North Star Fishing Company LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2021, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF system,

which will send notification of such filing to the following:

Timothy J. Conner, Esq.
Jennifer A. Mansfield, Esq.
Holland & Knight LLP
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
timothy.conner@hklaw.com
jennifer.mansfield@hklaw.com
camille.winn@hklaw.com

*Attorneys for Plaintiffs*

Gary K. Hunter, Jr.
Mohammad Omar Jazil
Holtzman Vogel Baran Torchinsky
& Josefiak, PLLC
119 S. Monroe Street, Suite 500
Tallahassee, Florida  32301
ghunter@holtzmanvogel.com
mjazil@holtzmanvogel.com

William Gerald Harrison, Jr.
Harrison Rivard Duncan & Buzzett
101 Harrison Avenue
Panama City, Florida  32401
wharrison@harrisonrivard.com

***Attorneys for Defendant Eastern
   Shipbuilding Group, Inc.***

*s/ J. David Stahl*
Attorney