UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTH STAR FISHING COMPANY LLC, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>NORWEGIAN HULL CLUB, et al.,<br><br>　　　　　　　Defendants. | CASE NO. C21-1438JLR<br><br>ORDER |

## I.　INTRODUCTION

Before the court is Defendants' motion to stay proceedings and to transfer this case to the United States District Court for the Northern District of Florida, Panama City Division.  (Mot. (Dkt. # 9); Reply (Dkt. # 16).)[1]  Plaintiffs North Star Fishing Company

---

[1] Defendants are Norwegian Hull Club ("NHC"), Royal & Sun Alliance Insurance Limited, Brit Syndicate 2987, Markel Syndicate Management 3000, QBE Marine & Energy CSN 1036, Channel Syndicate 2015, Neon 2468, Marketform 2468, and Allianz Global Corporate & Specialty Marine Insurance Company (collectively, "Defendants").

LLC ("North Star") and Eastern Shipbuilding Group, Inc. ("ESG") oppose the motion. (North Star Resp. (Dkt. # 13); ESG Resp. (Dkt. # 15).) Being fully advised,[2] the court DENIES Defendants' motion in part and GRANTS it in part.

## II. BACKGROUND

This action concerns a coverage dispute that arises from an insurance agreement (the "Policy") between North Star and ESG, as insureds, and Defendants, as insurers. (Compl. (Dkt. # 1-4) ¶ 1.) North Star is a fishing company based out of Seattle, Washington. (Stahl Decl. (Dkt. # 14) ¶ 2, Ex. C ("Suppl. Johnson Decl.") ¶ 2.) In December 2015, it contracted with ESG, a shipbuilder based out of Panama City, Florida, for the construction of a new fishing vessel (the "Vessel Construction Contract") that would eventually be named the NORTHSTAR (the "Vessel"). (*Id.* ¶ 3; *see also* Garfield Decl. (Dkt. # 11) ¶ 8, Ex. 5 (Vessel Construction Contract).)

In connection with the Vessel Construction Contract, North Star also purchased an "all-risks builder's risk insurance policy" (Suppl. Johnson Decl. ¶ 4), which covered damage to the hull, materials, machinery, and outfit of the Vessel (*see* Garfield Decl. ¶ 7, Ex. 4 (the "9/28/21 Johnson Decl."); *see also* 9/28/21 Johnson Decl. ¶ 4, Ex. A at 7 (the "Policy")). Individuals from Seattle, Washington; London, England; and Bergen, Norway "were involved in procuring, placing and issuing the Policy," which was issued in Seattle on January 20, 2016, and which names both North Star and ESG as insureds.

//

---

[2] Only Defendants request oral argument. (*See* Mot. at 1.) The court concludes that oral argument would not be helpful to its disposition of the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

(Policy at 2; Suppl. Johnson Decl. ¶¶ 4-5; Knudsen Decl. (Dkt. # 10) ¶ 11.) The Policy set the final contract value of the Vessel at $77 million (Policy at 2), "which included the contract price of approximately $72 million plus approximately $5 million for materials and equipment destined for the Vessel but not included in the contract price" (Knudsen Decl. ¶ 3).

ESG launched the Vessel on April 19, 2018, although additional work was anticipated to complete construction. (Suppl. Johnson Decl. ¶ 7.) On October 10, 2018, the Vessel sustained extensive damage when Hurricane Michael knocked it loose from its mooring, causing it to run aground. (*Id.* ¶ 8.) North Star, on behalf of itself and ESG, sought coverage under the Policy to pay ESG for the estimated costs of repairing the Vessel. (*Id.* ¶ 9.) Although the costs of repairing the Vessel were initially estimated to be lower than the $77 million contract value (and coverage limit under the Policy), the estimate was revised over time, and ESG ultimately concluded that the total cost of repair would be more than $109 million. (Knudsen Decl. ¶¶ 4-6.) North Star argued that it had a right, "in accordance with the Escalation Clause contained [in the Policy], to amend the Agreed Insured Value of the" Vessel up to the amount of the estimated repair costs. (*See* Knudsen Decl. ¶ 2, Ex. 2 at 1). NHC, as the lead subscriber to the Policy, objected to this proposed amendment by letter dated October 30, 2020, and asserted that, though further investigation of the claim would continue, "there may not be coverage under the Policy sufficient to satisfy the claims." (*Id.* ¶ 7, Ex. 3 at 3.)

On August 26, 2021, North Star and ESG "demand[ed] that the Insurers pay without additional delay all losses sustained by the [Insureds] with respect to the vessel

1  NORTH STAR as a result of Hurricane Michael, including all costs of refloating,
2  protecting, and repairing the vessel." (*Id.* ¶ 9, Ex. 5.)  Defendants responded by filing a
3  declaratory judgment action in the Northern District of Florida on September 9, 2021.
4  *See Norwegian Hull Club, et al. v. North Star Fishing Co. LLC, et al.*, Case No. 5:21-cv-
5  00181-RH-MJF (N.D. Fla.) (the "Florida Case").  North Star and ESG filed suit in King
6  County Superior Court on September 23, 2021, which Defendants removed to this court
7  on October 21, 2021.  (*See* Not. (Dkt. # 1) at 2-3; Compl. at 1.)

## III.   ANALYSIS

Defendants now move the court to (1) stay all proceedings in this action, including their obligation to respond to the complaint and their obligations under Federal Rule of Civil Procedure 26, and/or (2) transfer this case to the United States District Court for the Northern District of Florida.  (Mot. at 2.)  The court briefly addresses each request below, beginning with Defendants' request to transfer the case.

**A.   Transfer Motion**

The Florida district court presently has before it North Star's motion requesting dismissal or a transfer of that action to this court (the "Florida Motion").  *See* Florida Mot. at 11-21, *Norwegian Hull Club, et al. v. North Star Fishing Co. LLC, et al.*, 5:21-cv-00181-RH-MJF (N.D. Fla. Nov. 4, 2021), ECF No. 25; *see also* ESG Florida Mot., 5:21-cv-00181-RH-MJF (N.D. Fla. Nov. 4, 2021), ECF No. 27 (incorporating North Star's arguments by reference).  The parties agree that the Florida case, and the pending Florida Motion, implicate similar issues and identical parties.  (*See* Mot. at 2; North Star Resp. at 3, 6; ESG Resp at 1 (joining in North Star's opposition to Defendants' motion).)  They

further agree that the court in the Florida Case should "decide in which forum this litigation should proceed" by ruling on the Florida Motion. (North Star Resp. at 3; *see also* Reply at 2.) As such, there does not appear to be a need for the court to rule on the transfer issue at this time. *See Upstart Grp. LCC v. Upstart Grp. Inc.*, No. C19-1290RAJ-BAT, 2020 WL 1934059, at *2 (W.D. Wash. Apr. 22, 2020) (denying transfer motion and staying case pending the disposition of a similar motion by a court in another district). Accordingly, Defendants' motion for an order transferring this case is DENIED without prejudice.

**B.     Stay Motion**

Defendants alternatively ask the court for an order "staying all proceedings in this action, including [Defendants'] obligation to respond to the Complaint, and the parties' Rule 26 obligations." (Mot. at 2.) Despite agreeing that the Florida court should be given time to decide whether it will keep or transfer the substantive coverage issue underlying this suit, Plaintiffs nevertheless oppose a stay of this matter and urge the court to "allow discovery in this action to proceed" in the interim. (North Star Resp. at 3.) Defendants assert that allowing this case to proceed, pending a decision by the Florida court, would be "duplicative and burdensome." (Reply at 2.)

The court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In determining whether to grant a motion to stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir.

1962)). Those interests include: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*

All three factors weigh in favor of staying this matter. Plaintiffs assert that "allowing discovery to proceed here in the interim will prejudice no one and will serve the interests of justice and a timely resolution of this dispute," but identify no concrete damage that they will suffer if the case is stayed. (Resp. at 4; Stahl Decl. ¶ 7.) Conversely, Defendants will plainly be prejudiced by preparing a response to a case with an uncertain future before this court. Finally, allowing this litigation—and especially discovery—to proceed on parallel tracks before separate courts will result in needless complication, allows for potentially conflicting rulings, and fails to promote "the orderly course of justice." *Lockyer*, 398 F.3d at 1110. Accordingly, the court finds that a stay is warranted and Defendants' motion for an order staying all proceedings in this action is GRANTED.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion (Dkt. # 9) is (1) DENIED without prejudice as to Defendants' request for an order transferring this case to the United States District Court for the Northern District of Florida, and (2) GRANTED as to Defendants' request to stay all proceedings in this action. This action is hereby STAYED until the

//

United States District Court for the Northern District of Florida rules on the Florida Motion.

The parties are further ORDERED to notify the court within seven (7) days of the United States District Court for the Northern District of Florida ruling on the Florida Motion. Once the United States District Court for the Northern District of Florida has ruled on the Florida Motion, the parties may move this court for any relief that they belief is appropriate at that time.

Dated this 30th day of November, 2021.

JAMES L. ROBART
United States District Judge